UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) CAUSE NO. 1:11-cv-1703-WTL-DML ) |
| MIDWEST INDEPENDENT TRANSMISSION SYSTEMS OPERATOR, INC., | ) ) ) |
| Defendant. | ) ) |

### ENTRY ON MOTION FOR SUMMARY JUDGMENT

This cause is before the Court on the Defendant's motion for summary judgment (dkt. no. 51). The motion is fully briefed and the Court, being duly advised, **GRANTS IN PART AND DENIES IN PART** the motion for the reasons and to the extent set forth below.

### I. STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the admissible evidence presented by the non-moving party must be believed and all reasonable inferences must be drawn in the non-movant's favor. *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007); *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) ("We view the record in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor."). However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Id.* Finally, the non-moving

party bears the burden of specifically identifying the relevant evidence of record, and "the court is not required to scour the record in search of evidence to defeat a motion for summary judgment." *Ritchie v. Glidden Co.,* 242 F.3d 713, 723 (7th Cir. 2001).

## II. FACTUAL BACKGROUND

Plaintiff the Equal Employment Opportunity Commission ("EEOC") brings this suit on behalf of Crystal Wirstiuk. The facts of record, viewed in the light most favorable to the EEOC, as the non-moving party, are as follow.

Wirstiuk began working for Defendant Midwest Independent Transmission System Operator, Inc., ("MISO"), as its Human Resources Coordinator on March 12, 2007. She worked at MISO's corporate headquarters in Carmel, Indiana, and was responsible for handling immigration issues and providing support to the Human Resources Department. Beginning in 2008, Wirstiuk reported to Mark Wyatt, Senior Director of Total Rewards and Workforce Planning.

MISO provides short-term disability benefits for regular full-time employees on their first date of employment. Coverage under the short-term disability policy is provided at no cost to the employee and the short-term disability plan is self-administered by MISO. Short-term disability benefits are payable if: (1) the employee is totally disabled, which includes maternity leave; (2) total disability begins while the employee is covered under the short-term disability policy; or[1] (3) the employee is under the care of a physician.

On August 3, 2009, Wirstiuk began a twelve-week maternity leave pursuant to the Family and Medical Leave Act ("FMLA"). She received short-term disability benefits from

---

[1] The Court suspects that this "or" should be an "and," but both MISO's statement of the facts and the underlying affidavit say "or."

MISO during her leave. She returned to work as scheduled on October 27, 2009, with no restrictions.

On January 27, 2010, Wirstiuk met with Wyatt and requested a thirty-day leave of absence because she was experiencing what she described as "high anxiety and depression." Wyatt approved her leave request, and Wirstiuk received short-term disability benefits during her leave. On January 29, 2010, MISO received a fax from Wirstiuk's physician explaining that she was experiencing post-partum complications and requesting that she remain off work until February 26, 2010.

On February 26, 2010, MISO employee Tonya Snyder sent an email to Wirstiuk asking whether she would be returning to work the following day. Snyder, whose title was Senior Benefits Analyst, was responsible for administratively handling employee leaves. Snyder was a non-management employee and did not have the authority to approve accommodation requests. Wyatt was her supervisor.

Wirstiuk responded to Snyder's email stating that her physician was "putting her off work" for another thirty days. Wirstiuk had not contacted her supervisor, Wyatt, to request an extension of her leave, and other than her response to Snyder's email had not otherwise communicated her need for an extension.[2]

On March 1, 2010, Snyder followed up with Wirstiuk via email and explained that MISO would require a completed medical certification form from her treating physician and a doctor's note documenting her inability to return to work on February 26th. Shortly thereafter, MISO

---

[2]MISO makes much of Wirstiuk's failure to request an extension of her leave from Wyatt, but the evidence—namely Wyatt's deposition testimony—indicates that a MISO employee could request leave as an accommodation by either contacting her manager or "formally go[ing] through the human resources department," Wyatt Dep. at 96, and there is no indication that Wirstiuk's emails with Snyder, a Senior Benefits Analyst, did not constitute compliance with this requirement.

3

received a note from Wirstiuk's healthcare provider stating that her post-partum complications had not yet been resolved and that she could return to work on April 2, 2010. On March 16, 2010, Wirstiuk submitted the medical certification form that her physician had completed. The form indicated that her probable return-to-work date was March 29, 2010. When Snyder asked Wirstiuk to clarify whether she intended to return on March 29th or April 2nd, Wirstiuk replied the latter.

After learning Wirstiuk did not intend to return to work until April 2, 2010, Wyatt met with Human Resources Generalist, Julie Minteer, and Vice President/Human Resources Greg Powell to discuss how the situation should be handled. Wyatt felt that Wirstiuk's continued absence was problematic because it created workflow issues within the Human Resources Department. He also was unsure whether she would actually return on April 2nd, given the fact that she had already failed to return on her first projected return date. MISO ultimately decided that ending the employment relationship was an appropriate course of action. By letter dated March 23, 2010, Wirstiuk was informed that due to her extended period of time out of the office, her employment would be terminated effective March 23, 2010. The letter also informed her that she would receive short-term disability pay and benefits through April 2, 2010.

During Wirstiuk's leave of absence, a temporary employee, Hannah Pojar, performed the majority of Wirstiuk's work. Other employees in the Human Resources Department were also assigned some of Wirstiuk's duties. On May 24, 2010, MISO offered Pojar a permanent position as Wirstiuk's replacement. At her request, Pojar did not start in that position until August 23, 2010, because she was on a pregnancy-related leave from her current employer. In the meantime, MISO hired another temporary employee to work in the department.

### III. DISCUSSION

The EEOC asserts that MISO's treatment of Wirstiuk violated the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA"). "To establish a violation of the ADA, an employee must show: 1) that she is disabled; 2) that she is otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; and 3) that the employer took an adverse job action against her because of her disability or failed to make a reasonable accommodation." *Winsley v. Cook County*, 563 F.3d 598, 603 (7th Cir. 2009) (citation omitted). The EEOC asserts that MISO both failed to provide Wirstiuk with a reasonable accommodation and terminated her employment because of her disability. MISO moves for summary judgment on both claims.

### A. Failure to Accommodate

In its opening brief, MISO argues that the EEOC's failure to accommodate claim fails because Wirstiuk was not a "qualified individual with a disability." Under the ADA, a "qualified individual" is defined as a person who "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). MISO argues that the EEOC "cannot establish that [Wirstiuk] meets this definition due to her inability to report to work for more than two months." MISO Brief at 9.[3] MISO's argument on this point is as follows:

---

[3]This is the argument that MISO makes, and this is the argument to which the EEOC responds. In its reply brief, MISO notes that "[i]n its opening brief, MISO explicitly challenged whether [Wirstiuk] was a qualified individual with a disability. As part of its *prima facie* burden, the [EEOC] is required to introduce evidence that [Wirstiuk's] impairment constitutes a disability, as that term is defined by the ADA." MISO Reply at 1-2. Both of those statements are correct. What is not even arguably correct, however, is MISO's argument that because the EEOC did not "articulate how [Wirstiuk's] alleged condition constitutes a legal disability, summary judgment is warranted on this basis alone." *Id.* at 3. As the moving party, it was MISO's burden to articulate those issues on which "there is no genuine dispute as to any material

5

> The Seventh Circuit has repeatedly reinforced the common-sense notion that "if one is not able to be at work, one cannot be a qualified individual." *Byrne v. Avon Prods.*, 328 F.3d 379, 381 (7th Cir. 2003). *See also Nowak v. St. Rita High School*, 142 F.3d 999, 1003 (7th Cir. 1998) ("Obviously, an employee who does not come to work cannot perform the essential functions of his job"); *Waggoner v. Olin Corp.*, 169 F.3d 481, 484-85 (7th Cir. 1999) ("Except in the unusual case where an employee can effectively perform all work-related duties at home, an employee who does not come to work cannot perform any of his job functions, essential or otherwise."). Based on this premise, the Seventh Circuit has explicitly held that an employee who is unable to work for two months is not a qualified individual with a disability because the "inability to work for a multi-month period removes a person from the class protected by the ADA." *Byrne*, 328 F.3d at 380-381. *See also Hoang v. Abbott Labs.*, 2007 WL 2903182, *8 (N.D. Ill. Sept. 28, 2007) ("[P]laintiff's admitted inability to work for more than two months establishes that she is not a 'qualified individual with a disability…'").
>
> It is undisputed that regular attendance was an essential function of the HR Coordinator position. [Tab A, ¶ 7]. Likewise, there is no dispute that [Wirstiuk] was unable to report to work and perform the essential functions of her position from January 28, 2010 through April 2, 2010 as she admitted she was unable to do so in her deposition. [Tab B, pp. 64-65, 71]. As a result, [Wirstiuk's] inability to report to work for more than two months conclusively establishes she is not a "qualified individual with a disability." Accordingly, it is at this fundamental first step where the [EEOC's] ADA claim succumbs to summary disposition.

MISO Brief at 9. MISO in essence argues that the Seventh Circuit established a *per se* rule in *Byrne* that an employee who is unable to report to work for two months is not a "qualified individual with a disability" and therefore is not covered by the ADA. This is certainly not a frivolous argument, given the rather unequivocal statement in *Byrne* that "[i]nability to work for a multi-month period removes a person from the class protected by the ADA." *Byrne*, 328 F.3d at 381.

---

fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56(a). The EEOC had no obligation to introduce evidence on any issue that was not raised by MISO in its opening brief. And while MISO did, in fact, assert that Wirstiuk was not a "qualified individual with a disability," its arguments on that point were limited to whether she was "qualified." Because MISO's opening brief unequivocally failed to raise the issue of whether Wirstiuk had a disability as defined by the ADA, the EEOC was not obligated to address that prong of its prima facie case in its response to the motion. Neither will the Court address it here. Absent a stipulation by MISO, it will, of course, be an issue at trial.

The Court does not believe that *Byrne* is dispositive given the facts of this case, however. As noted, a person is a "qualified individual with a disability" if she can perform the essential functions of her job with a reasonable accommodation. "Whether a requested accommodation is reasonable or not is a highly fact-specific inquiry and requires balancing the needs of the parties." *Oconomowoc Residential Programs v. City of Milwaukee*, 300 F.3d 775, 784 (7th Cir. 2002). It is impossible, therefore, to determine whether a person is a "qualified individual with a disability" without determining whether there is a reasonable accommodation that would enable her to perform the essential functions of her job. And because a leave of absence can sometimes be a reasonable accommodation, s*ee Haschmann v. Time Warner Entertainment Co.,* 151 F.3d 591 (7th Cir. 1998) (*cited without apparent disapproval in Byrne*), it is necessary to conduct the "highly fact-specific inquiry" in order to determine whether the leave of absence requested by Wirstiuk was a reasonable accommodation given the specifics of MISO's situation. If it was—and if the leave of absence would have allowed her to return to work and do her job—then she was a qualified individual with a disability.

In *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391 (2002), the United States Supreme Court articulated a two-step approach to the reasonable accommodation analysis, which has been aptly summarized as follows:

> The first step requires the employee to show that the accommodation is a type that is reasonable in the run of cases. The second step varies depending on the outcome of the first step. If the accommodation is shown to be a type of accommodation that is reasonable in the run of cases, the burden shifts to the employer to show that granting the accommodation would impose an undue hardship under the particular circumstances of the case. On the other hand, if the accommodation is not shown to be a type of accommodation that is reasonable in the run of cases, the employee can still prevail by showing that special circumstances warrant a finding that the accommodation is reasonable under the particular circumstances of the case.

*Shapiro v. Township of Lakewood*, 292 F.3d 356, 361 (3rd Cir. 2002) (*quoted with approval in E.E.O.C. v. United Airlines, Inc.*, 693 F.3d 760, 763 (7th Cir. 2012)).  A lengthy leave of absence is not the type of accommodation "that is reasonable in the run of cases"—that is, in the ordinary situation it would not be reasonable to require an employer to provide such an accommodation.  However, the Court believes that the EEOC has proffered evidence from which a reasonable jury could conclude that there are "special circumstances" that demonstrate that the leave requested by Wirstiuk was reasonable given the specific facts of this case.  The facts read in the light most favorable to the EEOC are that after MISO terminated Wirstiuk in March 2010, it hired Hannah Pojar, a person who had been working for MISO as a temporary employee at the time of Wirstiuk's termination, to replace Wirstiuk.  MISO offered the position to Pojar on May 24, 2010, but Pojar did not start in the position until August 23, 2010.  These facts call into question whether it was reasonable to expect MISO to accommodate Wirstiuk by permitting her to remain on leave until June 2, 2010.  In other words, while MISO asserts that attendance was an essential function of Wirstiuk's job that she could not satisfy because she could not return to work until June 2, a jury reasonably could discredit that assertion based on the apparent lack of urgency with which MISO set about replacing her.  On the other hand, when provided with all of the evidence—which may or may not include facts not currently before the Court—a jury reasonably could conclude that Wirstiuk's requested accommodation was unreasonable.  This material issue of fact means that MISO's motion for summary judgment must be denied on the EEOC's failure to accommodate claim.

### B.  Discrimination Claim

In addition to its failure to accommodate claim, the EEOC also asserts a disability discrimination claim.

> To establish disability discrimination, a plaintiff must prove that (1) she is disabled within the meaning of the ADA, (2) she is qualified to perform the essential functions of the job, either with or without a reasonable accommodation, and (3) she suffered from an adverse employment action because of her disability. If an ADA plaintiff establishes a prima facie case, the burden shifts to the employer to offer a legitimate nondiscriminatory reason for the employment decision. If the employer succeeds, then the burden reverts to the plaintiff to show that there is a genuine dispute of material fact that the proffered reason for the employment action is pretextual.

*Hoppe v. Lewis University*, 692 F.3d 833, 838 -839 (7th Cir. 2012) (citations omitted). In this case, as discussed above, MISO did not raise the issue of whether Wirstiuk satisfied the ADA's definition of disabled, and there is a genuine issue of material fact whether she could perform the essential functions of her job with a reasonable accommodation—namely, the leave of absence she requested. With regard to the third element of the EEOC's prima facie case, there is no question that the termination of Wirstiuk's employment was an adverse employment action.

However, the EEOC has not presented evidence from which a reasonable jury could conclude that she was terminated because of her disability. Rather, the only evidence is that MISO terminated her because of her extended leave of absence. The EEOC points to the fact that MISO replaced Wirstiuk with Pojar and allowed Pojar to delay her start date for several months, and asserts that "[t]he only difference between Wirstiuk and Pojar was Wirstiuk's disability." EEOC Brief at 29. The EEOC points to no evidence to support this assertion, however; the Court is not aware of any evidence regarding Pojar's disability status. The EEOC also points to the notes that Wyatt made to himself about what he should say if Wirstiuk called him after receiving her termination letter. The EEOC argues that the fact that these notes reminded Wyatt not to "mention disability or FMLA" and to "focus on attendance" constitute evidence to support a finding that Wirstiuk was terminated because of her disability. These notes certainly are evidence that MISO was aware that Wirstiuk might make a claim under the ADA or

9

the FMLA, but the Court does not believe that it would be reasonable to infer from them that the reason for MISO's decision was anything other than Wirstiuk's continued absence from work. The jury could find that firing her for that reason violated the ADA because it constituted a failure to provide her with a reasonable accommodation, but, without more, no reasonable jury could find that her termination was because of her *disability*, rather than because of her absence from work. *Cf. Matthews v. Commonwealth Edison Co.*, 128 F.3d 1194, 1196 (7th Cir. 1997) ("Even if the individual is qualified, if his employer fires him for any reason other than that he is disabled there is no discrimination 'because of' the disability. This is true even if the reason is the consequence of the disability."). Accordingly, MISO is entitled to summary judgment on the EEOC's disability discrimination claim.

### C.  Punitive Damages

Finally, MISO moves for summary judgment on the EEOC's claim for punitive damages.

> Punitive damages are available to the EEOC if it can demonstrate that [MISO] engaged in intentional discrimination "with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a(b)(1). In *Kolstad v. American Dental Ass'n*, the Supreme Court established a three-part framework to determine whether punitive damages are proper under § 1981a. 527 U.S. 526, 533–46 (1999). First, the plaintiff must show that the employer acted with "malice" or "reckless indifference" toward the employee's rights under federal law. *Id.* at 533–39. A plaintiff "may satisfy this element by demonstrating that the relevant individuals knew of or were familiar with the anti-discrimination laws" but nonetheless ignored them or lied about their discriminatory activities. *Bruso v. United Airlines, Inc.*, 239 F.3d 848, 857–58 (7th Cir.2001). The plaintiff has the burden of proving "malice" or "reckless indifference" by a preponderance of the evidence. *See generally Price Waterhouse v. Hopkins*, 490 U.S. 228, 253 (1989). Second, the plaintiff must establish a basis for imputing liability to the employer based on agency principles. *Kolstad*, 527 U.S. at 539–44. Employers can be liable for the acts of their agents when the employer authorizes or ratifies a discriminatory act, the employer recklessly employs an unfit agent, or the agent commits a discriminatory act while "employed in a managerial capacity and ... acting in the scope of employment." *Id.* at 542–43 (quoting Restatement (Second) of Agency § 217 C (1957)). Third, when a plaintiff imputes liability to the employer through an agent working in a "managerial capacity ... in the scope of employment," the employer has the

> opportunity to avoid liability for punitive damages by showing that it engaged in good-faith efforts to implement an anti-discrimination policy. *Id.* at 544–46. This is a fact-intensive analysis, and "although the implementation of a written or formal anti-discrimination policy is relevant to evaluating an employer's good faith efforts ..., it is not sufficient in and of itself to insulate an employer from a punitive damages award." *Bruso*, 239 F.3d at 858.

*EEOC v. AutoZone, Inc.*, 707 F.3d 824, 835 (7th Cir. 2013). In *AutoZone*, the Seventh Circuit upheld a jury's award of punitive damages in a failure to accommodate case, finding the evidence was sufficient to support a finding that the defendant acted with reckless indifference to its employee's federal employment rights and that the decision was made by a manager acting in the scope of her employment. The Court finds that the record in this case, read in the light most favorable to the EEOC, is likewise sufficient to allow the issue of punitive damages to survive summary judgment.[4]

## IV. CONCLUSION

For the reasons set forth above, the Defendant's motion for summary judgment is **GRANTED** as to the Plaintiff's disability discrimination claim and **DENIED** in all other respects. The parties are reminded of their obligation to comply with the pretrial preparation deadlines set forth in the case management plan governing this case. Trial in this cause remains on the Court's calendar for three days beginning August 12, 2013.

---

[4]MISO states that it "has implemented and enforces policies prohibiting its employees from engaging in discriminatory conduct" and suggests that this is sufficient to immunize it from punitive damages. MISO Reply at 18. However, the evidence cited by MISO for this proposition is an affidavit that states that its employee handbook states that MISO has a non-discrimination policy and that "MISO adheres to a policy of equal opportunity and non-discrimination" that "applies to all MISO employment decisions." Lake Aff. at ¶¶ 3-4. This, without more, is not sufficient evidence to demonstrate that MISO has made a good faith effort to comply with the ADA. MISO simply has not provided the Court with enough facts to conduct this "fact-sensitive inquiry."

SO ORDERED:   05/30/2013

_William T Lawrence_

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification